UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**FRANCIS J. STYLES,**<br><br>Defendant. | Crim. No. 17-178 (KM)<br><br>**OPINION** |

This matter comes before the Court on the post-trial motion (ECF no. 61) of the defendant, Francis J. Styles, for a judgment of acquittal, pursuant to Fed. R. Crim. P. 29(c). Trial of the matter ended in a hung jury and declaration of a mistrial.[1] For the reasons expressed herein, the motion will be denied.

### I. Standard Under Rule 29

A Rule 29(c) motion for a judgment of acquittal is most commonly made after the entry of a guilty verdict. It may also be made, as here, when a jury has been discharged after having "failed to return a verdict." Fed. R. Crim. P. 29(c)(2); see also Fed. R. Crim. P. 29(b).[2]

Under Rule 29, a defendant who asserts that there was insufficient evidence to sustain a conviction shoulders "a very heavy burden." *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997) (quoting *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995)). The court cannot substitute its judgment for that of the jury. Hence it must view the evidence, and all reasonable

---

[1] The case was tried from December 4–14, 2017. The jury twice reported being hopelessly deadlocked, and I twice delivered a *Fioravanti* charge urging them to continue deliberations. See *United States v. Fioravanti*, 412 F.2d 407, 419-20 (3d Cir. 1969). After receiving a third "deadlock" note from the jury, I concluded that a third *Fioravanti* charge would be coercive, and I declared a mistrial on December 18, 2017. This Rule 29 motion followed.

[2] For obvious reasons, the requirement that the court conditionally determine whether a new trial should be granted applies only where the jury has returned a verdict. See Fed. R. Civ. P. 29(d)(1).

1

inferences therefrom, in the light most favorable to the prosecution, resolving all credibility issues in the prosecution's favor. *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001); *United States v. Scanzello*, 832 F.2d 18, 21 (3d Cir. 1987). Having done so, the court must uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). *Accord United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430-31 (3d Cir. 2013) (en banc) (reaffirming principle and reversing a line of drug conspiracy cases that seemingly undermined it); *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008) (issue for trial or appellate court is "whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence"); *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002).

## II. Discussion

### A. Charged offenses; knowledge and intent

Francis Styles, a Bayonne police officer, was indicted for falsification of a report with intent to obstruct an investigation, in violation of 18 U.S.C. § 1519, and misprision of a felony, in violation of 18 U.S.C. § 4. The Indictment alleges that a fellow Bayonne police officer, Domenico Lillo, violated the civil rights of a handcuffed arrestee by striking him in the face with a flashlight. (Lillo later pled guilty to the assault.) Styles is alleged to have covered up the assault by submitting a false incident report.

The parties agree that the falsification offense under 18 U.S.C. § 1519 has three essential elements:

> First: That defendant Styles knowingly concealed, covered up, falsified, or made false entries on a document or record;
>
> Second: That defendant Styles acted with the intent to impede, obstruct, or influence an investigation or proper administration of a matter or in relation to or in contemplation of any such matter or case; and
>
> Third: That the investigation or matter was within the jurisdiction of a department or agency of the United States.

2

Misprision of a felony under 18 U.S.C. § 4 has four essential elements:

> First: That a federal felony (here, Lillo's deprivation of the victim's civil rights) was committed;
>
> Second: That defendant Styles had knowledge of the commission of that felony;
>
> Third: That defendant Styles failed to notify the relevant federal authorities about the commission of the offense as soon as possible; and
>
> Fourth: That defendant Styles did an affirmative act, as charged, to conceal the crime.

(*See* Jury Instructions.)

From the defense point of view, there is one essential issue on this motion, as there was at trial. Styles does not dispute that the incident report was false. His defense was that he never actually saw Lillo strike the victim with a flashlight and did not learn about the assault before writing his report. If he did not see or know about the assault, he says, then he could not have *knowingly* or *intentionally* falsified a report or covered up a felony.

### B. Review of relevant evidence

The following survey is far from complete. I highlight enough of the evidence, however, to establish that the motion must be denied.

Video surveillance footage showed that the victim had resisted arrest and had to be wrestled down the front exterior stairs of his apartment building. At the bottom of the stairs, he was wrestled down and handcuffed. The officers and the victim came down the stairs rapidly, but did not fall down the stairs. Styles's report, however, related that the victim had fallen face first into the wall on the way down the stairs. Styles conceded in his testimony that this was inaccurate (*e.g.*, 12/11/17 Tr. 1020) A jury could well have accepted that the misstatement was innocent. Alternatively, however, it could have

3

rationally concluded that this was a deliberate misstatement, designed to account for the victim's subsequent injuries.

The surveillance video showed that Styles, Lillo, and a third officer then escorted the victim around the corner for the purpose of placing him in a police vehicle. The victim was handcuffed behind his back at the time. Styles's report claimed that the victim continued to struggle, although the video does not bear this out. A jury, again, could have concluded that this was a deliberate misstatement, designed to justify the officers' use of force.

During the walk, Lillo raised a metal flashlight, swung it across his body, and smashed it into the face of the victim. As I noted in deciding Styles's Rule 29 motion at the close of the government's case, the video shows that Styles was in close proximity to Lillo and the victim. This was "the kind of proximity where, if you were looking, you could have seen that [assault] either in your peripheral vision or in your direct vision." (12/11/17 Tr. 836) I would add that a person would likely have heard the impact as well. The immediate aftermath included copious bleeding (the victim required fifteen stitches). A jury could have concluded that a normally perceptive and curious person would have perceived what was happening.

Lillo, pursuant to a cooperating plea agreement, testified at trial. Lillo testified that the victim, contrary to Styles's report, did not receive the laceration to his forehead by hitting the wall by the stairs, and did not violently struggle when they escorted him around the corner. Lillo admitted hitting the victim with the flashlight, and stated that just before doing so he he made threatening statements to the victim, saying "knock it off, shut up." A jury could find that this would have called Styles's attention to the strike.

The victim was taken to the hospital for treatment of his injuries. At the hospital, telephone records corroborated that Lillo sent Styles a text message. Styles confirmed that a photo of the victim's injuries was attached, but he disputed Lilo's testimony that it was accompanied by a taunting message

4

("Whoop whoop. Sound of the police.") Styles deleted the message from his phone the same evening. (12/6/17 Tr. 227-31, 1033-34)

At the hospital, by his own admission, Styles told the victim's sister that the victim had fallen down the stairs. (12/11/17 at 1004-05) This was false, and it matches the cover story that later appeared in the report.

Lillo testified that during the car ride from the hospital back to his patrol car, he told Styles "holy shit, I fucking hit him. I can't believe I fucking did that . . . I just continued saying how am I going to get out of this." (12/6/17 Tr. 231) Styles, according to Lillo, responded "Let's see what Tim says," referring to Sgt. Timothy McAuliffe.

Back at the station house, according to Lillo, they did speak to McAuliffe. While Styles was drafting his report, McAuliffe told Styles "we're all going to get jammed up." (12/6/17 Tr. at 251-54) When the reports were produced in final form, neither Lillo's nor Styles's report mentioned the flashlight strike.

In short, there was substantial evidence both of consciousness of guilt and of guilt in fact. A rational jury could have found Styles guilty based on this record.

Styles proffers two countervailing considerations.

The first is that Lillo's testimony was not credible. To be sure, the defense had plenty of material to work with on cross-examination. But assuming there is a case in which a witness could be said to be incredible as a matter of law, this is not that case. Lillo was admitting that he was the primary wrongdoer. The testimony was corroborated at several key points by video and other evidence. Lillo's testimony merely confirmed that the video signified exactly what it seemed to signify: that Styles stood close by and would naturally have seen and heard the assault. Of course a jury *could* have found Lillo not credible, and perhaps some jurors did. Under the Rule 29 standard, however, that was a judgment for the jury to make—either way— as the finder of fact. Applying that standard, I cannot say that a rational jury could not have found Styles guilty based on all of the evidence, including that of Lillo.

5

Second, Styles points to the evidence that he could not see properly at the time of the assault because he had been exposed to pepper spray in the course of the arrest. The testimony was uncontradicted that there was a scrum at the top of the stairs, and that an officer used pepper spray in an attempt to subdue the victim. Styles's motion implies that the jury was therefore required to conclude that he was blinded and could not see the assault when it occurred shortly afterward. But even if exposed to pepper spray (directly or indirectly; the testimony conflicted), Styles was not necessarily blinded.[3] The video showed that, as the officers left the apartment and walked around the corner, Styles negotiated the stairs, navigated around objects on the sidewalk, walked a straight line, and seemingly interacted with other officers. In the video he shows no obvious signs of distress. He does not seem to have sought medical attention or help for pepper spray exposure.

Sometime thereafter, Styles drove the one mile to the hospital where the victim was being treated. There, he testified, he rinsed his eyes. This falls far short of requiring that a jury accept that he had been too impaired to see the assault.

Viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to the prosecution, and resolving all credibility issues in the prosecution's favor, I must deny the defendant's motion for a judgment of acquittal.

---

[3] There was expert testimony about the generic effects of exposure to pepper spray. This established various effects that "can" occur. See Reply Brf. 7. The expert could not and did not offer an opinion about the severity of the defendant's exposure or the state of his visual acuity at the time.

## CONCLUSION

For the foregoing reasons, the post-trial motion (ECF no. 61) of the defendant, Francis J. Styles, for a judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29(c), is **DENIED**. An appropriate Order will be filed with this Opinion.

Dated: February 14, 2018

**KEVIN MCNULTY**
**United States District Judge**